**HESTON et al. v. KUHLKE et al.**

**Civ. A. No. 22159.**

United States District Court
N. D. Ohio, E. D.

Sept. 29, 1948.

Motion for Rehearing Overruled
Jan. 27, 1949.

Lisle M. Buckingham and J. C. Frank, both of Akron, Ohio, and Oscar C. Limbach, of Cleveland, Ohio, for plaintiffs.

A. L. Ely and Wise, Roetzel & Maxon, all of Akron, Ohio, for defendants Otto J. Kuhlke, Leslie E. Soderquist, McNeil Machine and Engineering Co. and James W. Brundage.

Bates, Teare & McBean, of Cleveland, Ohio, for defendants William J. Carter and Akron Standard Mold Co.

WILKIN, District Judge.

This action was brought under Section 4915 of the Revised Statutes, Section 63 of Title 35 U.S.C.A. The Complaint alleges that the plaintiff Heston was party to four interference proceedings in the United States Patent Office, Nos. 78936, 78937, 77479, and 78938, involving means and methods of removing tires from vulcanizing molds, and that he had been denied a patent. The case was submitted upon the record of the decisions of the Board of Interference Examiners, additional oral testimony, exhibits, stipulations, and briefs. The Complaint prays this court to adjudge that the plaintiffs are entitled to receive a patent as specified in the claim filed by the plaintiff Heston and to decree that the subject matter of each of the said interferences is not patentable to any or all the defendants herein. The Answer of the defendants alleges that the Board of Interference Examiners awarded priority to Kuhlke in Interferences Nos. 78936 and 78937 and to Soderquist in Interferences Nos. 77479 and 78938, and denies that the plaintiffs or either of them is entitled to the relief prayed for herein or to any relief in the premises.

The law is well settled that a proceeding under Section 4915 is not an ap-

peal from the decision of the Board of Interference Examiners. It is an application to this court for an order setting at nought the action of an executive board of the government and giving to the plaintiffs the rights formerly awarded by that Board to the defendants. It imposes upon the plaintiffs the burden of sustaining their case by more than a preponderance of the evidence. It involves a question which has once been determined by a special tribunal entrusted with full power in the premises, and in order to prevail in this court the plaintiffs must establish their contention by testimony which in character and amount carries thorough conviction.

This court has studied the decisions of the Board of Interference Examiners (Plaintiffs' Exhibit 8) and has considered again the additional evidence found in the transcript of proceedings in this court in the light of the arguments of counsel for the plaintiffs, but the court not only has no thorough conviction that the decisions in the Patent Office were erroneous but is inclined to the view that the decisions were correct. The Board found that the sketch in evidence as Kuhlke Exhibit F–W constituted the most complete drawing in evidence of Heston's conception, but found there was no corroboration of its existence in that condition on November 14, 1938, and found further that that date was subsequent to the filing date of the senior party Kuhlke. It found that Heston had failed to show even a mental conception of any means or mechanism for manipulating the sucker ring to accomplish the functions ascribed to it, until after the filing of both the Kuhlke and Soderquist applications. Heston failed to satisfy the Board that the sucker ring could operate for shear-stripping. The testimony in this proceeding still leaves that point in grave doubt. The Board held Heston restricted to the date of the filing of his application, December 15, 1938 because of his failure to establish any prior conception of means to operate the sucker ring. The Board said: "The germ of an idea may have been present but there is no corroborative evidence that Heston developed it to the point where it might be considered a conception of the particular invention in issue." Nothing has been pre-

sented here to warrant a different conclusion by this court.

"An invention is the result of an inventive act; it consists in (1) a mental operation involving the conception of an idea, and (2) a physical operation involving the reduction to practice of the inventive concept." Walker on Patents, Sec. 23, p. 110.

Counsel for plaintiffs argued that this court should reverse the holding of the Interference Examiners that "the description of Figure 8 in the specification (of the Iverson patent) fails to provide a verbal picture of any particular mechanism for imparting the required motion to the sucker ring," because of the testimony of Kuhlke. On cross-examination he said, "Sure, a good engineer would figure something out on it." But the ability to design something from a broad idea does not meet the requirements of reduction to practice.

Having determined that the evidence is insufficient to convince this court that the plaintiffs are entitled to receive a patent, it is quite doubtful whether this court is authorized under Section 4915 to proceed any further. This case is different from the case of Mishawaka Rubber & Woolen Mfg. Co. v. Paine & Williams Co., 6 Cir., 139 F.2d 603, and does not call for an adjudication of invalidity of the patents granted to the defendants. It does not appear from the testimony that novelty or originality was wanting in the claims of the defendants regarding shear-stripping by shifting the mold parts, etc. On the other hand, it appears that such a method of releasing tires from the vulcanizing mold was novel and useful and was accepted by the tire industry. A proceeding under Section 4915, R.S., hardly warrants a full inquiry into the question whether the patents granted to the defendants had been anticipated by inventors other than the plaintiffs. Such an issue would have to be determined in a different proceeding. The court here is authorized merely to adjudge whether an applicant is entitled according to law to receive a patent for his invention as specified in his claims or for any part thereof. If in determining that question it became necessary for the court to determine that the whole field of shear-stripping had been

preempted, the defendants' patents would be affected by such ruling. But it seems that it would still be necessary to have them declared invalid in a separate action. In this case the court is not authorized to enter such a judgment because the claims of the defendants are not before the court except as to their priority relative to the plaintiffs' claims.

■ Serious objection is made by the defendants to much of the oral evidence in this hearing on the ground that it was available to the plaintiff Heston at the time of the hearings in the Patent Office and was not offered there. The law seems to sustain that objection. But even if all the evidence is considered, it is still insufficient to create that thorough conviction which would warrant a contrary judgment to that of the Board of Interference Examiners. Complaint dismissed at plaintiffs' costs.

### On Motion for Rehearing.

■ Motion for rehearing overruled. The court has reconsidered the case and finds that the points advanced in the motion for rehearing were not overlooked. This case was brought by virtue of Section 4915, R.S., which provides for a "bill in equity to obtain patent" and authorizes the court to adjudge whether the "applicant is entitled, according to law, to receive a patent". It does not authorize proceedings to question the validity of a patent issued to some other applicant. The court found that the evidence revealed patentability of the subject matter; the field of stripping devices for tire molds had not been preempted by prior art; in other words, the court did what the Court of Appeals, in Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, 734, said should be done. It determined "whether, upon identifying the subject-matter of the interfering patents, the invention therein stated is patentable."

The court then found that the application of Kuhlke was prior to that of Heston and that the evidence did not show the practicability of the Heston device (sucker rings).

The court did not find that "Kuhlke should be credited with what Soderquist and McNeil did" or that Kuhlke should "benefit from this prior reduction to practice." The court declined to find that the McNeil press and the Soderquist application anticipated and invalidated the Kuhlke patent, for two reasons: (1) such a finding would not be warranted in a proceeding under Sec. 4915, R.S., and (2) the evidence disclosed that Kuhlke's conception had been conveyed to Soderquist and the men who made the McNeil press, prior to the operation of the press or the filing of the Soderquist application.

This action was based mainly on the oral testimony of Honderich but the court was constrained to find that such testimony was inadmissible in law and insufficient in character to warrant a reversal of the decisions in the interference proceedings in the Patent Office.

■ As to the question of attorney's fees, the court finds that the original case would not warrant such an allowance, but the court is constrained to the view that some allowance should be made for the services of defense counsel with reference to the motion for rehearing.

As to rehearings generally, it should of course be understood that a judge of this court is human and therefore subject to mistake and error. If some point of fact or law has been overlooked in any case, it is the duty of counsel to call that point to the court's attention before a final entry is made. The court welcomes and commends such action by counsel.

On the other hand, however, the court is too burdened with important work to give time and attention to reargument of points which were presented and considered. The court does its work thoroughly so that it will not have to be done again. Unless there is some matter that arose after trial or that was overlooked or neglected, the court should not be asked to review the case. A party dissatisfied with the ruling should seek such review in the Court of Appeals.