**UNITED STEELWORKERS OF AMERI-CA, AFL–CIO, etc., et al., (Plaintiffs) Appellants,**

v.

**MESKER BROS. INDUSTRIES, INC., et al., (Defendants) Appellees.**

No. 71–1335.

United States Court of Appeals,
Eighth Circuit.

March 7, 1972.

S. Sheldon Weinhaus, St. Louis, Mo., for plaintiffs-appellants.

George F. Heege, Clayton, Mo., for defendants-appellees.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.

HEANEY, Circuit Judge.

This appeal questions the propriety of the trial court's orders, 327 F.Supp. 578, dismissing the plaintiffs' complaint for want of jurisdiction and denying their subsequent motion to amend.

Some years prior to 1968, Mesker Brothers and United Steelworkers of America entered into a collective bargaining agreement. The agreement required Mesker to " * * * maintain a policy or policies of insurance written by a reliable insurance company providing the coverage listed * * * [in the attached Schedule of Benefits]." One of the benefits listed was "One Thousand Five Hundred ($1500.00) for accidents with respect to dismemberment of one hand." The agreement further provided " * * * that the Company will not operate this insurance benefit plan and that the Company's liability will be limited to obtaining and paying the premiums on the insurance policy, and that the insurance company will provide the benefits and administer the same. These benefits will be subject to such conditions and limitations as standard practice in the insurance business prescribes. * * *".

Pursuant to the collective bargaining agreement, Mesker purchased an insurance policy from the Aetna Life Insurance Company.

On October 4, 1968, one of Mesker's employees sustained a severe hand injury requiring amputation of most of the hand. The employee rejected the doctors' advice that the whole hand be amputated at the wrist. The employee filed a $1,500 claim with Aetna for dismemberment of the hand. Aetna denied payment because the hand had not been severed at or above the wrist, as required by the insurance policy.

Thereafter, the Steelworkers Union and the employee filed this action against Mesker and Aetna. The complaint set forth the agreement between the Union and Mesker and asserted that the court had jurisdiction under Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185). It also asserted that Mesker had contracted with Aetna, that a claim had been made and denied by Aetna, and that Aetna's "refusal to pay [the claim was] * * * without just cause and excuse." The plaintiffs asked for a declaratory judgment, damages in the sum of $1,500, and attorneys' fees and costs.

The defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter was granted on the grounds that the complaint failed to allege a dispute over the interpretation of the collective bargaining agreement between Mesker and the Union. The court stated:

" * * * The complaint itself indicates that Mesker has complied with the collective bargaining agreement [1] * * * The sole issue in this suit is whether the injury sustained by Blackard is one covered by the insurance policy written by Aetna. This is a suit for the recovery of a money judgment on an insurance contract, and as such, is not within the jurisdiction of this Court. * * *"

The plaintiffs moved to amend their complaint, stating that it was not intended to imply that the coverage which

---

1. Paragraph 9 of the complaint read:
 "9. That in carrying out its collective bargaining obligations pursuant to the terms of the written collective bargaining agreement, which terms had been in effect for many years prior thereto as it relates to the subject matter of this suit, defendant employer obtained insurance coverage for such plan from the defendant insurance company, which has regularly attempted to provide insurance coverage for the Schedule of Benefits agreed upon in and incorporated by reference in the collective bargaining agreement."

Mesker purchased from Aetna did, in fact, meet the requirements of the collective bargaining agreement. The proposed amendment alleged that Mesker had breached the collective bargaining agreement by failing to obtain the required coverage from Aetna.[2] The trial court denied the motion to amend. The plaintiffs appeal from the orders dismissing the complaint and denying the motion to amend.

We need not decide whether the trial court erred in dismissing the complaint because we find that it erred in refusing the plaintiffs leave to amend.

 Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely granted when necessary to establish jurisdiction. See, Taylor v. Beckas, 137 U.S.App.D.C. 417, 424 F.2d 905 (1970); International Ladies' Garment W.U. v. Donnelly Garment Co., 121 F.2d 561 (8th Cir.1941); 3 J. Moore, Federal Practice ¶ 15.09 (2nd ed. 1968); 6 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1474 (1971). Such amendments may be made following dismissal of a complaint, and reversal may occur if leave to amend is improperly denied. See, Ballou v. General Electric Company, 393 F.2d 398 (1st Cir.1968), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); Breier v. Northern California Bowling Proprietors' Ass'n, 316 F.2d 787 (9th Cir.1963); Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir.1961); International Ladies' Garment W.U. v. Donnelly Garment Co., supra, 121 F.2d at 563. And see generally, 3 J. Moore, supra at ¶ 15.10; 6 C. Wright and A. Miller, supra at § 1483.

In Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court stated that

" * * * If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

See, Hanson v. Hunt Oil Company, 398 F.2d 578, 581 (8th Cir.1968).

 Regardless of whether the opportunity to amend after dismissal is a matter of right or whether it is within the discretion of the trial court, we think the plaintiff in this case should be

---

2. Paragraph 9 as amended by the plaintiffs read as follows:

"9. That in attempting to carry out its collective bargaining obligations pursuant to the terms of the written collective bargaining agreement, which terms had been in effect for many years prior thereto as they relate to the matter of this suit, defendant employer obtained insufficient insurance coverage for such plan from defendant insurance company, which coverage was not the same nor as broad as provided for or required in the said schedule of benefits contractually agreed upon; and defendant insurance company has not provided and is refusing to provide the benefits and insurance coverage called for under said schedule of benefits agreed upon in and incorporated by reference in the collective bargaining agreement, although said defendant insurance company and its representatives knew that such insurance was required to be purchased by defendant employer and such coverage was to be in accordance with said schedule of benefits agreed upon and incorporated by reference in said collective bargaining agreement."

given that opportunity. Here, the trial judge did not state any reasons for denying leave to amend. The defendants do not allege any prejudice which would result from the granting of leave. The motion to amend was made immediately following the granting of the motion to dismiss and before entry of judgment. Finally, the motion to amend was not futile. The revised complaint alleged that Mesker had breached the collective bargaining agreement by failing to obtain the required insurance benefits for those in the bargaining unit. The complaint was, thus, sufficient to state a cause of action under Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185).

There remains the question of what action the trial court should take on remand. We address ourselves to that problem to the extent possible on the basis of the present record.

■ The collective bargaining agreement between the Union and Mesker establishes a five-step procedure for the adjustment of differences between the Company and the Union. The fifth step is binding arbitration. The dispute between the Company and the Union should have been submitted to arbitration,[3] and the trial court should have granted the Company's rather ambivalent request for arbitration.[4] Nothing has changed so during the intervening period that the Company and the Union should be relieved of their responsibility to arbitrate the dispute in accordance with the terms of their contract.[5] Accordingly, on remand, the trial court shall, on the request of either party, stay the court proceedings, shall retain jurisdiction, and shall require that the dispute be submitted to arbitration. Although we express no opinion on the merits of the controversy, we believe that the issue is clearly subject to arbitration.[6] All procedural questions growing out of the dispute and bearing on its final disposition should be submitted to the arbitrator.[7]

Aetna is not a party to the collective bargaining agreement, and its rights and obligations cannot be determined in an arbitration proceeding under the con-

3. " * * * [W]e feel that it is important that parties to collective bargaining agreements submit disputes, arguably arising out of such agreements, to arbitration. This holding is grounded in the conviction that labor disputes ought to be kept out of the courts whenever possible, that arbiters are usually qualified by experience and training to decide such disputes, * * * that the informality of arbitration proceedings and the leadership of the arbiter is conducive to the settlement not only of the precise dispute being arbitrated but of other differences which may be festering in the relationship between the parties, and that an arbiter is in a position to act more expeditiously, if he will, than is a court." (Citation and footnote omitted.)
Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Inter., 442 F.2d 251, 254 (8th Cir. 1971).

4. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) ; Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167 (5th Cir. 1971), at 170 n. 3.

5. See, Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2nd Cir. 1945).

6. See, United Steelworkers v. Warrior & G. Nav. Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

7. "Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration * * *.
"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. * * * "
Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964).

tract unless it consents to be bound thereby. The trial court can, if necessary, adjudicate Aetna's rights and obligations under its pendent jurisdiction after the arbitration process has been completed.[8] Obviously, all interests, including those of the federal court system, would best be served if Aetna participates in and agrees to be bound by the arbitration proceeding.

Congress and the Supreme Court have made it clear that contract grievance procedures are preferred for settling labor disputes.[9] The Supreme Court has also made it clear that either party to a labor agreement can ordinarily insist on arbitration.[10] But despite some general language indicating that an offer to arbitrate is a prerequisite to court action,[11] we find no authority for the proposition that the federal courts can refuse to exercise jurisdiction under Section 301 if the parties to the action waive their rights to arbitration under their collective bargaining agreement. Therefore, if all parties in this case insist on proceeding to trial, thus waiving their rights to arbitration, the trial court must hold a trial.

Reversed and remanded for action consistent with this opinion.

---

8. See, Connecticut General Life Insurance Company v. Craton, 405 F.2d 41, 49 (5th Cir. 1968).

9. "Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d) states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * * ' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."
United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960). See, Republic Steel Corp. v. Maddox, *supra*.

---

10. *Cf.*, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Steinman v. Spector Freight System, Inc., 441 F.2d 599 (2nd Cir. 1971).

11. "This was the law until, in 1965, Republic Steel Corp. v. Maddox, *supra*, held that contract grievance procedures voluntarily incorporated by the parties in collective bargaining agreements subject to the Labor Management Relations Act, unless specified by the parties to be nonexclusive, must be exhausted before direct legal redress may be sought by an employee."
Sullivan v. Pacific & Arctic Railway & Navigation Co., 439 F.2d 267, 269 (9th Cir. 1971). See Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601 (1956).